Smith, C. J.
We find from the evidence in this case, that the council of the city of Cincinnati has duly .authorized the plaintiff to construct and operate an electric system of motive power on all the lines of street railroads owned and operated by it, the work of construction to be done under the supervision of tbe board of public affairs of such city. Under the authority thus granted, and under the supervision of said board, *426 and of the city engineer, the plaintiff, owning and operating the line of street railroad in question, running on Gilbert avenue, in front of the premises of the defendants, and thence to and over McMillan and other streets of the city to the Reading road, has constructed an electric system of motive power, practicable in character; and as an essential part of said system, has placed a pole eleven inches in diameter at the bottom, and twenty-seven feet in hight, in front of the defendants’ said premises on Gilbert avenue. It is placed opposite to a partition wall of the three story building of the defendants, on said premises, used for shops and lodgings, and close to the curbstone. By the plan now adopted, similar poles, about one hundred feet apart, are placed on each side of the streets along which said line of street railroad runs, and said poles are opposite to each other. A single wire is stretched on each side of the street from the top of one pole to the top of another on the same side, and from the top of each of said poles, a wire extends to the top of the pole on the opposite side of the street, with a guard wire above it. .The object and purpose of the first named of these two wires across the street is, to support the two other wires, one of which runs parallel with, and immediately above each of the two tracks on which the street cars of the plaintiff, propelled by horse power, have been running for several years past. The wires on each side of the street are intended to convey a current of electricity to assist in the propelling of the cars on the tracks, as is also the wire extending across the street. And the court further finds that there is no danger to life or property from the use of said wires and the passage of the electric current over the same, and that the placing, continuance and use of said pole and wires, in the manner aforesaid, do not and will not work any substantial injury to the premises of the said defendants, or materially impair their rights therein, or operate as a substantial impediment to their access to said premises.
On this finding of facts, what are the legal rights of the parties? We think it may be regarded as the well established law of the state, that a street railroad may be lawfully constructed, maintained and operated, over and along the streets of a municipal corporation, where the right to do so has *427 been granted by the corporate authorities, without obtaining the consent of a property holder (except that consent of a majority of the property holders on each street so occupied, as required by sec. 2502, Revised Statutes), along the line of such street, unless some special or particular injury is thereby done to him. If such injury does result, the consent of such person must be obtained to what is, in effect, an appropriation of his interest in the land to the use of others, or his right therein must be acquired in some way known to the law.
. The right to the use of the highway for the purposes of a street railroad, when no such special injury results to an adjacent landholder, as we understand from the very able and instructive opinion of Judge Ranney in the case of The Cin. & Spring Grove Avenue Street Railway Co. v. The Village of Cumminsville, 14 Ohio St. 523, is based on this doctrine, that “ the use of such highway for the purpose of carrying passengers over the same, in this particular manner, differs in nothing from the exercise of the common right of carrying them by coaches or omnibuses; and everything needing a grant, or the further authority of law, is the right to place and maintain in the highway the necessary conveniences for this new description of carriages. When this grant is confined to a mere occupation of the easement, previously acquired by the public, al-' though its enjoyment may require a restriction upon former modes, we can see nothing in it but the control, regulation and adjustment of a public right, so as to make it best answer the purposes, and meet the wants of all classes of the community. It does not exclude or seriously interfere with the original modes in which the highway was used but simply adds another, in furtherance of the same general object.” And, as stated in another part of the same opinion, “ in either of the modes known to our laws, by which lands are acquired for a public highway, an interest commensurate with the attainment of the objects of the acquisition rests in the public at large, and is necessarily placed under the exclusive control of the law-making power. Whatever is fairly within the contemplation of a grant, whether voluntary or enforced, and necessary to its beneficial enjoyment, is within the legal operation of the instrument or proceeding by which it is effected.” * *428 * ' * “But when new structures and new modes- of travel devolve additional burdens on the land, and materially impair the incidental rights of the owner in the highway, they require more than the public has or can grant, and the deficiency can only be supplied, by appropriating the private right upon the terms of the constitution.”
In this case, the tracks of the street railroad continue in the condition in which they have been for several years past —the only addition or change which has been made to adapt it to the use of the electric motor, being the poles and wires before referred to. If the structure of the plaintiff in the street, so long in use, is not an invasion of the rights of the defendants (though the same must in the nature of things be some obstruction to the highway; but largely compensated in a populous city by the advantages of this mode of travel), it is difficult to see why the mere placing of a pole of this size, on the margin of the side-walk, at once, and necessarily, gives to the owner of the adjacent premises, the right to prevent it, or to have it removed. The sidewalk is only a part of th.e highway, and is to be dealt with as such, and it seems to us that a structure erected thereon, stands on the same principle as those in the center of the street.
And why should the planting of the pole in this instance be held, on the evidence, to entail any special damages to the defendants? It is not objected that it is unsightly in appearance, or unsuited to the purpose for which it is used; all that is claimed is, that it impedes the access to defendants’ premises, and that the electric system in use is unsafe. We have found as a fact that neither of these objections is well founded. The margin of the side-walks in cities and villages for centuries past, has been appropriated for the placing of shade trees, public lamp posts, awnings, hitching posts and similar structures, and when they are suitably placed', and at sufficient intervals, cannot, we think, be any material obstruction to the access to the premises adjacent thereto, or be said to impose new burdens upon the land, the right to impose which had not been acquired by the public.
It is urged upon us by the counsel for the defendants, that the question before us is exactly analogous to the placing of *429 posts for the carrying of wires for telegraph or telephone service, and that while it may be true that the weight of authority in other states may be in favor of the doctrine that such use of the highway does not impose a burden on the adjacent premises, for which compensation must be made, yet that the de•cisions on the subject are conflicting, and those so holding.are by divided courts, and that in Ohio, the question has been settled as to the use of the highway for such purposes, so far as a decision of the circuit court can do so, by the case of Smith v. The Telegraph Co., 2 Circuit Court Rep. 259.
Whether a structure erected in the public highway for the support of wires for the transmission of messages by electricity, stands on precisely the same footing as one for the purposes of travel over the highway (the original and principal object for which the public acquired the right), may be a question of doubt. The former certainly, could not have been in the contemplation of the parties to the original grant, when the right to this highway was acquired, which was over fifty years ago. Nor could it have been contemplated that it would be used either for a horse railroad, or for the running of cars propelled by electricity over the same, for neither of these modern improvements was then thought of. But it was acquired that the public might travel over the same — on foot, on horse-back or in vehicles of various kinds, and as we have before stated, we think it is the law of this state that the use of cars drawn by horses on rails permanently placed in the roadway, is not to be considered per se, of itself, an unlawful or improper change of the use of the highway, or as imposing an additional burden upon the adjacent land. And if this be so, then the use of it, in substantially the same way, but with a different motive power, would not alter the case. It is still a mode of travel over the same highway. While therefore we entertain a high opinion of the ability and learning of the court making the decision referred to, we do not understand that it involves precisely the same question which is presented to us, and we feel bound to adopt what we think is the principle announced by the supreme court in the case to which we have so fully referred, and which certainly must be *430 allowed to be the leading case in Ohio on the questions there discussed.
Ramsey, Maxwell & Ramsey and E. W. Kittredge, for plaintiff.
Harmon, Colston, Goldsmith & Hoadly, for defendants.
One other argument was presented by the counsel for the defendant, which is extremely plausible, but which we think is unsound, and it is one which is referred to in the decision of the circuit court which we have cited. It is this — that although it may now be said that this one pole and the wires strung upon it, may not now be injurious to the defendants’ property, what is to prevent the plaintiff, when it desires to do so, from placing other poles in front of these premises, and a much greater number of wires on them ? Or if the plaintiff-can not be prevented from doing this, why may not the various telephone or telegraph companies who may obtain a grant from the council to do so, also plant their poles in front of defendants’ premises, and string a vast number of wires upon them, thus practically shutting the defendants in and occupy-' ing the entire sidewalk ?
It seems to us that the answer to this argument, which was made by the counsel for the plaintiff, was a conclusive one. That this is a practical question as to the use of the streets as it is now being done by the plaintiff. Is it of that exclusive character which operates to deprive the defendants of their rights, by causing them substantial injury? If not, then the fact, that if other structures may be erected near to this property hereafter, great injury would result to the defendants, is not to be taken into consideration in this case, for it must be supposed that when any substantial right of theirs is invaded, the courts will interfere to prevent it. When such a case is presented, it will be time enough for such action.
Holding these views, we think there should be a decree for the plaintiff.